UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE MCCRAY,

    Plaintiff,

        v.

JEFFERSON CHEVROLET COMPANY, INC.,
ET AL.,

    Defendants.

_____/

Case No. 17-cv-12058

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#14]

### I. INTRODUCTION

Presently before the Court is Defendants' Motion for Summary Judgment. Dkt. No. 14. Defendants request this Court dismiss the present action because Plaintiff does not bring enough evidence to support her claims. Plaintiff asserts that her deposition and other evidence in the record are sufficient to preclude summary judgment. For the reasons discussed below, the Court will grant in part and deny in part Defendants' Motion.

### II. FACTUAL BACKGROUND

On July 12, 2016, Plaintiff's 2004 Trailblazer would not start, and she had it towed to Defendant Jefferson Chevrolet (Dealer). Dkt. No. 18-1, pg. 7–8 (Pg. ID

420–21). The next day, Plaintiff learned that her car was not repairable. *Id.* at pg. 8 (Pg. ID 421). She discussed buying a new car with a salesperson at Jefferson Chevrolet, Wilson Andrew Roberts. *See id.* Plaintiff lives off of a limited income. Plaintiff receives $912.00 per month via Social Security Disability. *Id.* at pg. 6 (Pg. ID 419). She also receives about $20.00 per month in child support payments because she is the primary caretaker of her seven-year-old grandson. *Id.* at pg. 5, 19 (Pg. ID 418, 432). Plaintiff receives $90.00 per month in food stamps. Dkt. No. 1-2, pg. 4 (Pg. ID 10). Therefore, Plaintiff discussed buying an "affordable" car with Mr. Roberts, with payments at around $300.00 per month. Dkt. No. 18-1, pg. 8 (Pg. ID 421).

Plaintiff alleges that Defendant Dealer extended her consumer credit to buy a 2016 Chevrolet Traverse. Dkt. No. 1-2, pg. 3 (Pg. ID 9). Plaintiff states that Defendant Dealer, through her discussions with Mr. Roberts, told her that it would accept her 2004 Chevrolet Trailblazer as a trade-in on the purchase of the 2016 Chevrolet Traverse. *Id.* From her conversation with Mr. Roberts, Plaintiff believed that the total cost of the 2016 Traverse was $28,000. Dkt. No. 18-1, pg. 14 (Pg. ID 427). Plaintiff's monthly payments on her 2004 Trailblazer were $381.00 per month. *Id.* at pg. 8 (Pg. ID 421). Mr. Roberts told Plaintiff that her monthly payments on the 2016 Traverse would be less than her payments on her 2004 Trailblazer, about $350.00 per month or lower. *Id.* at pg. 9 (Pg. ID 422). This is

despite the fact that the newer car cost more—Plaintiff's 2004 Trailblazer cost a total of $10,000 and Plaintiff believed the 2016 Traverse to cost $28,000. *Id.* at pg. 8–9 (Pg. ID 421–22). Plaintiff did not think this was abnormal because she believed that she was getting a special deal, similar to deals that she had seen on television. *Id.* at pg. 14 (Pg. ID 427). Defendant Dealer also agreed to pay off the lien—approximately $6,800—on Plaintiff's 2004 Trailblazer. *Id.* at pg. 8 (Pg. ID 421).

On July 13, 2016, Plaintiff entered into a Retail Installment Sales Contract (RISC) with Defendant Dealer. Dkt. No. 14-3. Defendant Dealer assigned the RISC to Defendant Ally Financial Services, Inc. (Ally Financial). Dkt. No. 1-2, pg. 3 (Pg. ID 9). The first page of the RISC includes Federal Truth-In-Lending Disclosures, which states the annual percentage rate, finance charge, amount financed, total payments, and total sale price of the deal. Dkt. No. 14-3, pg. 2 (Pg. ID 88). The first page of this document also lists Plaintiff's monthly payment on the Traverse as $655.69 per month. *Id.* Plaintiff alleges that she only saw the second page of the RISC on the day that she signed it. Dkt. No. 18-1, pg. 15 (Pg. ID 428). Plaintiff also asserts that none of the terms of the contract were filled in when she signed it, except for a rebate amount of $7,826.00.[1] *Id.* at pg. 11 (Pg. ID

---

[1] The rebate amount of $7,826.00 is on the first page of the RISC. However, Plaintiff stated in her deposition that she only saw the second page of the RISC

424). Plaintiff signed the contract despite it being mostly blank because Mr. Roberts "asked [her] to. He was the dealer, [and Plaintiff] was following his instructions." Dkt. No. 18-1, pg. 11 (Pg. ID 424). Plaintiff asserts that she did not receive any documents before signing the RISC. *Id.* Plaintiff also states that the only documents she received to take home after she signed the RISC were registration documents for the 2016 Traverse. *Id.*

Plaintiff took possession of the 2016 Traverse after signing the RISC. Defendant Dealer had Plaintiff's 2004 Trailblazer towed back to her house for Gateway, the company with a lien on the Trailblazer, to pick up. *Id.* at pg. 9 (Pg. ID 422). Dealer claimed there was no room for Plaintiff's 2004 Trailblazer on the lot. *Id.* at pg. 10 (Pg. ID 423). The keys to the 2004 Trailblazer stayed in the car. *Id.* Plaintiff did not know her 2004 Trailblazer was not traded in until Gateway called and asked for payment on the Trailblazer. *Id.* at pg. 15 (Pg. 428). Plaintiff then discovered that Defendant Dealer did not pay off her lien on the 2004 Trailblazer. *Id.* at pg. 5 (Pg. ID 11). Plaintiff also discovered that the monthly payments on the 2016 Traverse were higher than what Defendant Dealer had represented—approximately $655.69 per month. *Id.* at pg. 6 (Pg. ID 12); Dkt. No. 1-2, pg. 6 (Pg. ID 12). The 2004 Trailblazer was repossessed due to Plaintiff's

---

when she signed it. Thus, it is unclear to the Court whether Plaintiff actually saw the first page of the RISC on the day that she signed it.

missed payments. *Id.* at pg. 18 (Pg. ID 431). Plaintiff was also not able to meet her payments on the 2016 Traverse, and it was repossessed. *Id.* Plaintiff's credit score went from about 690 to 494 after the repossessions. *Id.* Plaintiff now has to pay family members to complete her daily travels around town. *Id.* Plaintiff also states that she still owes Gateway $6,800, and she owes Ally Financial approximately $12,000 after the repossession of the 2016 Traverse. *Id.* at pg. 19 (Pg. ID 432).

Plaintiff filed her complaint in the Circuit Court for Wayne County on May 22, 2017. Dkt. No. 1-2, pg. 16 (Pg. ID 22). In her complaint, Plaintiff alleges eight counts: (1) fraud and/or misrepresentation, (2) breach of contract, (3) violation of the Michigan Motor Vehicle Sales Finance Act, (4) violation of the Michigan Consumer Protection Act, (5) conversion and treble damages, (6) violation of the Truth in Lending Act, (7) Holder Liability, and (8) exemplary damages. *Id.* at pg. 6–15 (pg. ID 12–21). On June 23, 2017, Defendants removed the action to this Court based on federal question jurisdiction for Plaintiff's claim under the Truth in Lending Act. Dkt. No. 1. On January 30, 2018, Plaintiff filed a Motion to Reopen Discovery in order to dispose the salesperson who contracted with Plaintiff, Wilson Andrew Roberts. Dkt. No. 15. Defendants opposed the Motion on February 12, 2018 citing Plaintiff's delay in initiating discovery. Dkt. No. 17. This Court denied the Motion on March 19, 2018. On January 30, 2018, Defendants filed the

present Motion for Summary Judgment. Plaintiff opposed the Motion on February 21, 2018. Dkt. No. 18. Defendants filed a reply on March 6, 2018. Dkt. No. 21.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment. The Rule states, "summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). "All factual inferences 'must be viewed in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

#### A. Truth In Lending Act (Count VI)

Plaintiff's sole federal claim, count six of her complaint, alleges a violation of the Truth in Lending Act (TILA). Dkt. No. 1-2, pg. 13 (Pg. ID 19). The Truth in Lending Act requires several disclosures to consumers, such as the amount

financed, the finance charge, the annual percentage rate, the total of payments, and the sale price. 15 U.S.C. § 1638. Plaintiff alleges that Defendants violated 15 U.S.C. § 1638(3)–(6), and (9) by not disclosing the amount financed, the finance charge, the annual percentage rate, the total of payments, the sale price, and the security interest. *See* Dkt. No. 1-2, pg. 14 (Pg. 20). Plaintiff also alleges that Defendants violated 15 U.S.C. § 1638(b) and Regulation Z, 12 CFR §§ 226.17 and 226.18, by not giving Plaintiff a copy of the disclosures in a form that she could keep prior to signing the RISC. Dkt. No. 19, pg. 7 (Pg. ID 500).

Plaintiff's deposition testimony asserts that the RISC that she signed was blank when she signed it, except for the rebate section. Dkt. No. 18-1 at pg. 11 (Pg. ID 424). Plaintiff's deposition testimony also asserts that Defendant Dealer did not give her any paperwork to take home with her before she signed the RISC— Plaintiff only received her registration after she had signed the RISC. *Id.* Plaintiff cannot provide any corroborating evidence that the RISC was not filled out when she signed it besides her own testimony. *Id.* at pg. 20 (Pg. ID 433). Additionally, no other evidence in the record supports Plaintiff's testimony.

Defendant Dealer claims that it provided Plaintiff with all the required disclosures when she received a copy of the RISC when she bought the 2016 Traverse. Dkt. No. 14, pg. 23 (Pg. ID 154). On page two of the RISC, Plaintiff signed directly below a statement indicating that before she signed the contract,

"[Defendant Dealer] gave it to [her], and [Plaintiff was] free to take it and review it." Dkt. No. 14-3, pg. 3 (Pg. ID 189 The statement also read, "[y]ou confirm that you received a completely filled-in copy when you signed it." *Id.* Defendants also provided the affidavit of Brian Tellier, General Manager of Jefferson Chevrolet. Mr. Tellier testified that it was impossible for the RISC to only have the rebate amount of $7,826.00 filled in when Plaintiff signed it. Dkt. No. 14-7, pg. 3 (Pg. ID 201). This is because the software that generates the purchase documents can never print an incomplete form. *Id.* The software also cannot print on a previously signed, partially filled-in document. *Id.* Therefore, Plaintiff's testimony that the rebate amount of $7,826.00 was filled in on the contract necessarily requires that the entire RISC was filled in. *Id.* at pg. 4 (Pg. ID 202).Wilson Andrew Roberts, Plaintiff's salesperson in the RISC transaction, also provided a statement. Mr. Roberts stated that Plaintiff "was provided a complete and filled-in copy of all the purchase documents for her review, including the . . . RISC." Dkt. No. 14-9, pg. 3 (Pg. ID 207).

Other circuits have considered what constitutes sufficient evidence of compliance with the TILA. The Eighth Circuit has held that an acknowledgement signed by the appellants that they received a fully completed copy of the disclosure statement was prima facie proof of delivery. *Whitlock v. Midwest Acceptance Corp.*, 575 F.2d 652, 653 (8th Cir. 1978). The court continued to say that because

there was prima facie proof, the appellants could not rely on the allegation in their complaint that they did not receive disclosures before they signed the contract. *Id.* The appellants had to have more evidence in support of their allegation. *Id.* The appellants did not offer any support for their allegations by affidavit or deposition. *Id.* Therefore, the district court was correct in granting summary judgment. *Id.* In this case, Plaintiff also signed an acknowledgement that she received a fully completed copy of the disclosure statement. However, unlike the appellants in *Whitlock*, Plaintiff did provide evidence other than the allegations in her complaint to support her allegation. Plaintiff provided the deposition testimony that the RISC was mostly blank, except for the rebate provision, at the time that she signed it. Plaintiff has more evidence than just the allegations in her complaint. Therefore, she can survive summary judgment, unlike the appellants in *Whitlock*.

The Eastern District of Michigan has held that a signed acknowledgement of delivery, together with an RISC that outlined all the requisite disclosures, complied with the TILA. *Jackson v. Telegraph Chrysler Jeep, Inc.*, No. 07-10489, 2009 WL 928224, at *2 (E.D. Mich. Mar. 31, 2009). The plaintiffs in *Jackson* alleged that their contract contained a hidden finance charge because the defendants did not disclose the market value of the car plaintiffs were buying. *Id.* The market price of the car differed from the cash price the defendants listed on the contract. *Id.* Here, the Plaintiff is alleging that she did not receive any disclosures because she signed a

blank contract. This is unlike the plaintiffs in *Jackson*, who did not allege that they failed to receive any TILA disclosures before signing their contract. The *Jackson* court did not have to consider testimony from the plaintiffs alleging that they signed a blank document. Therefore, the *Jackson* holding is not clearly analogous to the present case such that this Court can grant summary judgment.

The Eastern District of Virginia considered a similar issue in *Harper v. Lindsay Chevrolet Oldsmobile, LLC*. 212 F. Supp. 2d 582, 587 (E.D. Va. 2002). In *Harper*, the plaintiff alleged TILA violations, arguing that she did not receive the required disclosures before she became contractually obligated to the defendant for the purchase of a car. *Id.* Plaintiff signed a disclosure document that stated she had read the retail installment contract, completely filled in. *Id.* The disclosure document also acknowledged that the plaintiff received the disclosure before the retail installment contract and the disclosure was completely filled in before she signed it. *Id.* Thus, the court held that the plaintiff had acknowledged in the contract documents that she had an adequate opportunity to review the retail installment contract before signing it. *Id.* The court also noted that in the plaintiff's deposition, she stated that the sales representative explained certain portions of the retail installment contract with her, like the "Itemization of Amount Financed" section. *Id.* Therefore, the court held that the record was uncontradicted in

reflecting that plaintiff was shown the required TILA disclosures in writing before she signed the contract. *Id.*

In this case, Plaintiff also signed a disclosure statement stating that she had received a copy of the RISC, and that the RISC was completely filled in before she signed it. However, Plaintiff's deposition did not acknowledge that Defendant Dealer had explained portions of the RISC to her as it presently appears. Plaintiff stated in her deposition that Mr. Roberts explained the deal to her, but it was a different deal than what the filled-in RISC currently looks like. Dkt. No. 18-1, pg. 11 (Pg. ID 424). The only thing Mr. Roberts pointed out to Plaintiff on the RISC was the rebate. *Id.* During Plaintiff's deposition, Defense counsel asked Plaintiff about the statement of acknowledgement that she signed:

> 2 … You confirm that you received a
> 3 completely filled in copy when you signed it."
> 4 Can you confirm that that says that there?
> 5 A. **Yes, he explained it to me**…

*Id.* at pg. 10 (Pg. ID 423). Defendants assert that Plaintiff's statement "Yes, he explained it to me" is an admission that Mr. Roberts explained the acknowledgment of receipt to her. Dkt. No. 21, pg. 3 (Pg. ID 649). However, it is unclear exactly what "it" refers to in Plaintiff's statement. Plaintiff could be referring to the entire contract deal itself, or to something else. Plaintiff also does not admit that Mr. Roberts showed her specific finance disclosures. Therefore, the

present case is different than *Harper* because in *Harper*, the record was uncontradicted in showing that the plaintiff was shown the requisite TILA disclosures in writing before she signed the contract. Here, the record does not clearly indicate that plaintiff received the required TILA disclosures and that she received the disclosures before she signed the RISC.

Plaintiff cites *Jenkins v. Landmark Mortgage Corporation of Virginia* for the proposition that acknowledgement of receipt of disclosures only creates a rebuttable presumption of delivery that cannot stand in the face of testimony that plaintiff did not receive timely disclosures. 696 F. Supp. 1089, 1093 (W.D. Va. 1988). *Jenkins* cites this proposition from 15 U.S.C. § 1635(c). The rule that written acknowledgment only creates a rebuttable assumption is only applicable to § 1635, and not to other sections. *See* 15 U.S.C. § 1635(c) (stating that "written acknowledgement of receipt of any disclosures . . . by a person to whom information . . . is required to be given *pursuant to this section* does no more than create a rebuttable presumption of delivery thereof.) (emphasis added). Because the rebuttable presumption is only applicable to § 1635—a section about home mortgages—Plaintiff cannot properly rely on it to defend her TILA claim. Therefore, the Court will not consider this argument.

Defendants also assert the argument that Plaintiff's deposition testimony is not enough to withstand summary judgment.[2] This is because it is uncorroborated, "self-serving testimony." *See* Dkt. No. 21, pg. 4 (Pg. ID 645). The Court finds this argument insufficient to grant summary judgment in favor of Defendants on Plaintiff's TILA claim. Sixth Circuit precedent that held self-serving testimony was insufficient to survive summary judgment did so in the context of a negligence claim—which required a clear and convincing showing to prevail. *Brooks v. Am. Broadcasting Cos., Inc.*, 999 F.2d 167, 172 (6th 1993). The *Brooks* court held that the district court was not required to accept self-serving testimony to provide clear and convincing evidence of negligence. *Id.* However, the clear and convincing standard is not applicable to Plaintiff's TILA claim. Further, the *Brooks* court only held that the district court was not required to accept self-serving testimony. The *Brooks* court did not hold that the district court could not accept self-serving testimony. Therefore, Plaintiff's uncorroborated deposition testimony can be sufficient to preclude summary judgment.

In summary, this Court will deny summary judgment as to Plaintiff's TILA claim. Plaintiff's deposition testimony asserts that Plaintiff signed a nearly blank

---

[2] Defendants assert this argument in the context of Plaintiff's fraud claim. Dkt. No. 21, pg. 4 (Pg. ID 645). However, the argument is applicable to Plaintiff's TILA claim; therefore the Court will consider it for the TILA claim.

RISC. Defendants provide testimony from Mr. Tellier and Mr. Roberts that the RISC was not blank when Plaintiff signed it. This conflicting testimony presents a genuine dispute of material fact that prevents summary judgment. The fact that Plaintiff signed an acknowledgement that stated the RISC was filled in and that she reviewed it before she signed is not sufficient to grant summary judgment, as analyzed above. Therefore, this Court will deny summary judgment on Plaintiff's TILA claim.

## B. Fraud and/or Misrepresentation (Count I)

Count one of Plaintiff's complaint alleges fraud and/or misrepresentation. Dkt. No. 1-2, pg. 6 (Pg. ID 12). Plaintiff states that Defendant Dealer represented to her that it would accept her 2004 Trailblazer as a trade-in toward the purchase of the 2016 Traverse. *Id.* Plaintiff also states that Defendant Dealer represented to her that it would pay off the lien on the Trailblazer. *Id.* Lastly, Plaintiff states Defendant Dealer told her that her monthly payments on the Traverse would be less than her payments on the Trailblazer. *Id.*

A fraud claim in Michigan requires a showing "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby

suffered injury." *U.S. Fidelity Guaranty Co. v. Black*, 313 N.W.2d 77, 114 (Mich. 1981). The plaintiff's reliance must be "reasonable" to get damages for misrepresentation. *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 690 (Mich. Ct. App. 1999). Michigan courts have held that reliance is not reasonable where plaintiffs had information available to them that they chose to ignore. *See Nieves v. Bell Indus., Inc.*, 517 N.W.2d 235, 238 (Mich. Ct. App. 1994); *Webb v. First of Mich. Corp.*, 491 N.W.2d 851, 854 (Mich. Ct. App. 1992).

In this case, it is unclear whether Plaintiff had information available to her— the RISC—that she chose to ignore. As stated above in this Court's TILA analysis, there exists a genuine dispute about whether the RISC was filled in when Plaintiff signed it. Plaintiff could not have had information available to her that she chose to ignore if the RISC was not filled in when she signed it. However, even if the RISC was not filled in, Plaintiff's reliance was still unreasonable. Reliance is not reasonable if the statements being relied upon are "preposterous or palpably false, if the truth was discoverable through minimal investigation, or if a party closes its eyes to the possibility of misrepresentation." Peter A. Alces, Law of Fraudulent Transactions § 2:18 Elements of Fraud—Reasonable Reliance (2018) (citing *Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 243 (D. Mass. (1999)).

First, it was not reasonable for Plaintiff to believe that Defendant Dealer was accepting her 2004 Trailblazer as a trade-in. According to Plaintiff's own testimony, she did not sign any documentation transferring the title of the vehicle. Dkt. No. 18-1, pg. 9 (Pg. ID 422). Plaintiff never received any documents indicating that she was trading in the Trailblazer. *Id.* Defendant Dealer never priced the Trailblazer, nor did it indicate how much credit Plaintiff would get for the trade-in. *Id.* As stated by Plaintiff, Defendant Dealer towed the Trailblazer to Plaintiff's house for Gateway, Plaintiff's lender, to pick up. *Id.* It is not reasonable to believe that Defendant Dealer would take possession of the Trailblazer as a trade-in if Gateway would be picking it up. In conclusion, the facts, as stated by Plaintiff, render it unreasonable for Plaintiff to believe that Defendant would be accepting her Trailblazer as a trade-in.

Next, it was not reasonable for Plaintiff to believe that Defendant Dealer would be paying off the loan on Plaintiff's 2004 Trailblazer. It was unreasonable for Plaintiff to believe that Defendant was accepting the Trailblazer as a trade-in. Therefore, Defendant would have no incentive to pay off the loan on the Trailblazer.

Lastly, it was not reasonable for Plaintiff to believe that her monthly payments on the 2016 Traverse would be less than the monthly payments on the 2004 Trailblazer. Plaintiff stated that this payment structure did not seem strange to her

because "you see things on television all the time where prices are knocked down . . . ." Dkt. No. 18-1, pg. 14 (Pg. ID 427). Plaintiff thought she was getting some type of special deal. *Id.* Plaintiff's 2004 Trailblazer cost a total of $10,000 and Plaintiff believed that the 2016 Traverse cost $28,000. *Id.* at pg. 8–9 (Pg. ID 421–22). It is not reasonable to believe a special deal would include lower monthly payments for a new car that is nearly three times the cost of an older car. In conclusion, the facts, as stated by Plaintiff, render it unreasonable for her to believe that payments on the 2016 Traverse would be less than payments on the 2004 Trailblazer.

In summary, Plaintiff's fraud/misrepresentation claim against Defendants fails because there was no reasonable reliance on Defendant Dealer's alleged representations. Therefore, this Court will grant summary judgment as to Plaintiff's fraud/misrepresentation claim.

### C. Breach of Contract (Count II)

Count two of Plaintiff's complaint alleges breach of contract. Dkt. No. 1-2, pg. 8 (Pg. ID 14). Plaintiff alleges that Defendant Dealer agreed to sell the 2016 Traverse to Plaintiff for payments of less than $350.00 per month, to accept Plaintiff's 2004 Trailblazer as a trade-in, and to pay off the loan on the Trailblazer. *Id.* Defendant did not keep these promises; therefore Defendant is liable for breach. *Id.*

Plaintiff alleges that, contrary to what the written contract indicates, Defendant Dealer sold the Traverse to her for monthly payments of $350.00 per month. However, the Parol Evidence Rule (PER) bars this argument. The PER prevents the introduction of extrinsic evidence, oral or written, that contradicts the terms of a written contract. *Barclae v. Zarb*, 834 N.W.2d 100, 117 (Mich. Ct. App. 2013). This extrinsic evidence must have occurred before the execution of the written contract. *Id.* Here, Plaintiff asserts that Mr. Roberts told her that the payments on the Traverse would be less than her payments on the Trailblazer. Dkt. No. 18-1, pg. 9 (Pg. ID 422). After this discussion, Plaintiff asserts that she signed the RISC. *See id.* In this case, there is a written contract and prior oral communications that contradict the written contract. Therefore, the PER applies, and the court cannot consider the alleged oral agreement.

The contract to accept the Trailblazer as a trade-in and pay off the lien that Defendant allegedly breached was an oral contract. *See* Dkt. No. 18-1, pg. 9 (Pg. ID 422) (Plaintiff stated she never received any documents indicating that she was trading in the Trailblazer). Michigan law follows the Statute of Frauds, which requires the purchase of goods over $1,000 to be in writing. M.C.L. 440.2201(1). The Trailblazer is a good that was allegedly traded-in for over $1,000. Therefore, the Statute of Frauds is applicable to this transaction. The trade-in agreement was

not in writing. Therefore, it violates the Statute of Frauds and Plaintiff cannot recover for breach.

In summary, the PER bars Plaintiff's breach of contract claim regarding the amount of her monthly payments. The Statute of Frauds bars Plaintiff's breach of contract claim regarding the trade-in and payment of the 2004 Trailblazer. Therefore, this Court will grant summary judgment in favor of Defendants as to Plaintiff's breach of contract claim.

### D. Michigan Motor Vehicle Sales Finance Act (Count III)

Plaintiff alleges a violation of the Michigan Motor Vehicle Sales Finance Act (MVSFA). Dkt. No. 1-2, pg. 9 (Pg. ID 15). Plaintiff alleges that Defendant Dealer failed to maintain a license to engage in installment sales as required by the MVSFA. *Id.* Plaintiff also alleges that Defendant Dealer failed to disclose the necessary information to Plaintiff under the MVSFA because Plaintiff did not receive a copy of the RISC until she requested it from Defendant Ally Financial. *Id.*; Dkt No. 19, pg. 15 (Pg. Id 498).

Defendant Dealer submitted as Exhibit G its Motor Vehicle Installment License. Dkt. No. 14-8. Therefore, Plaintiff's assertion that Defendant failed to maintain its license fails.

The MVSFA requires that installment sale contracts disclose certain information, such as the price of the motor vehicle, the down payment made by the buyer, and the unpaid cash balance, among other things. M.C.L. 492.113. A buyer must receive this information prior to the signing of the contract. M.C.L. 492.112(b). These requirements are similar to those required by the TILA. Plaintiff asserts that she did not receive the requisite disclosures because she did not receive a copy of the RISC until she requested it from Defendant Ally Financial. Dkt No. 19, pg. 15 (Pg. Id 498). Ally Financial provided her with the RISC on August 4, 2016—several weeks after she signed the RISC on July 13, 2016. *See* Dkt. No. 1-2, pg. 25 (Pg. ID 31) (letter from Ally Financial responding to Plaintiff's request for a copy of the RISC). The Court finds that Plaintiff has presented enough evidence to preclude summary judgment on this issue. Plaintiff's allegations create a genuine dispute about whether she received the required disclosures before she signed the RISC. *See also* Section IV.A., *supra* (analyzing Plaintiff's TILA claim).

In conclusion, this Court will grant summary judgment on Plaintiff's MVSFA claim to the extent that Plaintiff claims Defendant Dealer was not properly licensed. This Court will deny summary judgment on Plaintiff's MVSFA claim to the extent Plaintiff alleges she did not receive the requisite disclosures.

**E. Michigan Consumer Protection Act (Count IV)**

Count four of Plaintiff's complaint alleges a violation of the Michigan

Consumer Protection Act (MCPA), M.C.L. 445.901. Dkt. No. 1-2, Pg. 10 (Pg. ID

16). The MCPA prohibits "unfair, unconscionable, or deceptive methods, acts, or

practices in the conduct of trade or commerce . . . ." M.C.L. 445.903(1). However,

it exempts any "transaction or conduct specifically authorized under laws

administered by a regulatory board or officer acting under statutory authority of

this state or the United States." M.C.L. 445.904(1)(a). For the exemption to apply,

the general transaction must be specifically authorized by law, regardless of

whether the specific alleged misconduct is prohibited. *Liss v. Lewiston-Richards,*

*Inc.*, 732 N.W.2d 514, 519 (Mich. 2007).

The Michigan Court of Appeals considered the applicability of the MCPA

exemption in *Jimenez v. Ford Motor Credit Company.* No. 322909, 2015 WL

9318913, at *6 (Mich. Ct. App. Dec. 22, 2015). The *Jimenez* court held that a

dealer of motor vehicles was regulated by the Motor Vehicle Code via the

Secretary of State. *Id.* Therefore, the court held that the sale of the motor vehicle at

issue in *Jimenez* was a "transaction or conduct specifically authorized under laws

administered by a regulatory board or officer acting under statutory authority of

this state or the United States." *Id.* at 7. Thus, the MCPA exemption applied. Here,

the transaction at issue is also the sale of a motor vehicle. Therefore, like the *Jimenez* court, this Court holds that the MCPA exemption applies.

Plaintiff cites several cases to support her argument that the MCPA exemption does not apply. However, these cases are not sufficiently analogous to the present case. Plaintiff cites cases that do not involve the sale of a motor vehicle. Plaintiff also cites *Newton v. Bank West*, which held:

> We decline to engage in a sweeping review of all of the possibilities in which the MCPA may apply to banks, and we emphasize that, by our decision in this case, **we are not ruling that the banking industry as a whole is exempt from the provisions of the MCPA.** Rather, we find that the specifically authorized mortgage loan transactions are exempt.

686 N.W.2d 491, 495 (Mich. Ct. App. 2004) (emphasis added). The *Newton* court held that the specific transaction of mortgage loan transactions is exempt from the MCPA, and not the banking industry as a whole. Similarly, the *Jimenez* court held that the transaction of selling motor vehicles is exempt from the MCPA, and not the auto industry as a whole. Therefore, it is not error to follow the analysis of the *Jimenez* court, as the court discussed the same transaction as the present case: the sale of a motor vehicle.

In conclusion, this Court finds that Defendants are exempt from MCPA liability under the MCPA exemption. Therefore, this Court will grant summary judgment on Plaintiff's MCPA claim.

**F. Conversion and Treble Damages (Count V)**

Count five of Plaintiff's complaint brings a claim for conversion and treble damages. Dkt. No. 1-2, pg. 12 (Pg. ID 18). Plaintiff asserts that Defendant received Plaintiff's trade-in vehicle and received funds intended for the pay-off of the Gateway lien for its own use. *Id.*

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989). In this case, the record does not reflect that there was any conversion. Nothing in the record establishes that Defendant wrongfully exerted dominion over Plaintiff's 2004 Trailblazer. Plaintiff stated in her deposition that Defendant Dealer had Plaintiff's 2004 Trailblazer towed back to her house for Gateway, the company with a lien on the Trailblazer, to pick up. Dkt. No. 18-1, pg. 9 (Pg. ID 422). The keys to the 2004 Trailblazer stayed in the car. *Id.* Plaintiff did not know her 2004 Trailblazer was not traded in until Gateway called and asked for payment on the Trailblazer. *Id.* Based on these statements, Defendant never wrongfully exerted dominion over Plaintiff's Trailblazer. Next, there are no facts in the record that establish Defendant Dealer converted funds that were intended to pay the Gateway lien. No evidence supports the conclusion that Defendant wrongfully exerted dominion over any funds intended to pay off the lien on the 2004 Trailblazer.

In conclusion, this Court will grant summary judgment on Plaintiff's conversion and treble damages claim.

### G. Exemplary Damages (Count VIII)

Plaintiff brings a claim for exemplary damages. Dkt. No. 1-2, pg. 15 (Pg. ID 21). Plaintiff states that Defendant Dealer's acts and omissions were wilful and wanton and exacerbated Plaintiff's damages. *Id.*

Exemplary damages are not allowed unless the defendant's conduct "was malicious, or so wilfull and wanton as to demonstrate a reckless disregard of the plaintiff's rights." *Getman v. Mathews*, 335 N.W.2d 671, 672 (Mich. Ct. App. 1983). In this case, the Court has denied summary judgment as to Plaintiff's TILA and MVSFA claims. Based on the record, it is possible to show that Defendant Dealer's failure to comply with these statutes was malicious, wilfull, or wanton. Therefore, this Court will deny summary judgment on Plaintiff's claim for exemplary damages.

### H. Holder Liability (Count VII)

Lastly, Plaintiff brings all the claims against Defendant Ally Financial that she brings against Defendant Dealer under holder liability. Dkt. No. 1-2, pg. 15–16 (Pg. ID 20–21). Defendant Dealer assigned its interest in Plaintiff's RISC to Defendant Ally Financial. Dkt. No. 14-3, pg. 3 (Pg. ID 189). However, it is not

clear to the Court what implications this assignment has for the present action. Neither Plaintiff nor Defendants provide briefing on this issue.[3] Therefore, the Court will deny summary judgment as to Plaintiff's Holder Liability claim. The claims that remain against Defendant Dealer also remain against Defendant Ally Financial.

## V. CONCLUSION

For the reasons discussed herein, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment. This Court will dismiss Counts one, two, three as to the issue of license, four, and five. This Court will not dismiss Counts three as to the issue of required disclosures, six, seven, and eight.

SO ORDERED.


Dated:          April 26, 2018

                                        s/Gershwin A. Drain
                                        HON. GERSHWIN A. DRAIN
                                        United States District Court Judge

---

[3] Plaintiff only discusses holder liability in her complaint. Dkt No. 1-2, pg.15–16 (Pg. ID 20–21). Defendants' sole reference to holder liability in its Motion states, "[a]s all of Plaintiff's claims against Ally are derivative of the unfounded claims against Jefferson, those claims must be dismissed as well." Dkt. No. 14, pg. 28 (Pg. ID 159).